UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-cv-24059

TANYA ALLEN,

     Plaintiff,

v.

CARNIVAL CORPORATION & PLC,

     Defendant.

_____/

**COMPLAINT FOR DAMAGES**
**AND DEMAND FOR TRIAL BY JURY**

     Plaintiff, TANYA ALLEN (hereinafter "ALLEN"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION & PLC, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

     1.    ALLEN seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

     2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

     3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

     4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

     5.    ALLEN is *sui juris* and is a resident and citizen of the state of North Carolina.

6.     CARNIVAL is a citizen of the state of Florida and the nations of Panama and the United Kingdom.

7.     CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.     CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

   a.     Operated, conducted, engaged in, or carried on a business venture; and/or

   b.     Had an office or agency; and/or

   c.     Engaged in substantial activity; and/or

   d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## **DEFINITIONS AND FACTUAL ALLEGATIONS**

10.   At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in ALLEN'S incident.

11.   ALLEN'S incident occurred on or about October 27, 2022, while she was a fare paying passenger on CARNIVAL'S vessel, the *Sunshine*.

12.   At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Sunshine*.

13.   On or about October 27, 2022, between approximately 12:00 p.m. and 1:00 p.m., ALLEN was at CARNIVAL's private island, Half Moon Cay, where she participated in a CARNIVAL sponsored game of tug of war (hereinafter, the "game."). As ALLEN played, an unidentified intoxicated male passenger in front of her suddenly fell backwards and forcibly made contact with ALLEN's head and body, thereby causing her to fall down and hit her head.

14.   This unidentified male passenger had – prior to the subject incident – also participated in a ship sponsored "musical towels" game previous to the tug of war game, and was unreasonably rowdy, failed to follow the game's instructions/rules, and smelled of alcohol while participating in the musical towels game. The cruise director, a man who went by the name "TJ," previously noticed that this male passenger was unreasonably rowdy in that he was failing to follow the games instructions/rules, and smelled of alcohol in both the musical towels game and the tug of war game, and also observed this male passenger standing too close to ALLEN since the start of the tug of war game approximately five minutes until the time this passenger fell into ALLEN, but the cruise director failed to intervene to stop this passenger from continuing to participate in the ship-sponsored games.

15.   As a result, ALLEN sustained severe injuries that include, but are not limited to, a concussion and/or other traumatic brain injuries.

16.   At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

a.   There were an unreasonable amount of participants on each side of the tug of war rope, approximately sixteen or more participants on each side, which caused the rope to be pulled with an unreasonably great force, increasing the danger of collisions between participants.

b.   The tug of war rope was unreasonably thin and small such that the participant who

collided with ALLEN was unable to grip the rope adequately.

c. CARNIVAL failed to enforce the safety rules of the subject game, which required that participants keep reasonable distance between each other for each other's safety.

d. CARNIVAL's unreasonably failure to separate the male passenger from ALLEN during the tug of war game despite the fact that it knew or should have known of the rowdy behavior, failure to follow the game's instructions/rules, and intoxication of this participant, since the cruise director observed this behavior approximately thirty minutes before the incident since the start of the musical towels game, but failed to separate this dangerous participant from the games.

e. The subject sand in the area of the subject game was being played was unreasonably hard, which reduced the traction of both the male participant's and ALLEN's feet, thereby causing ALLEN's incident.

f. CARNIVAL should have required the participants to wear proper footwear with a high degree of traction during the subject game but failed to do so.

g. Other dangerous conditions that will be revealed through discovery.

17.    Each of these dangerous conditions was a sufficient cause of ALLEN's incident and injuries, each of these conditions caused ALLEN's incident, and ALLEN is alleging that CARNIVAL was negligent as to each of these conditions in the alternative.[1]

18.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

---

[1] A sufficient cause means a cause that, acting alone, is sufficient to cause an effect. (https://www.verywellhealth.com/understanding-causality-necessary-and-sufficient-3133021). In this case, this means that each of the dangerous conditions JACKSON has alleged alone was a cause of his incident such that the only way CARNIVAL could have prevented JACKSON's incident was to have adequately warned of or remedied each of these conditions.

a.  After ALLEN's incident the ship's doctor said he would waive the medical charges on the ship because he knew from experience there was severe danger of injury to passengers while playing the subject tug of war game, and the ship's doctor also said that this game should not be played.

b.  As soon as the tug of war game started approximately five minutes before her incident, ALLEN observed participants of the tug of war game falling over, such that CARNIVAL had ample time to be aware that this game was unreasonably dangerous to its passengers but failed to stop the game or otherwise intervene in it for its passengers' safety.

c.  Instead, the cruise director only said over the loudspeaker to "be careful" due to the dangerousness of the game, such that CARNIVAL was aware of the danger, but only provided an inadequate warning to mitigate it.

d.  The cruise director was in the subject area at the time of the incident, and he was in the immediate vicinity of the incident, such that ALLEN reasonably infers that he was or should have been aware of the dangerous and/or risk-creating conditions ALLEN was encountering, and separated the unreasonably intoxicated, and rowdy passenger from ALLEN.

e.  CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the area and materials on it, including the subject sand, such that CARNIVAL should have known of the design defects of the subject sand and area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in **paragraph 16** of this complaint.

f.  Both prior to and after the subject incident, CARNIVAL installed and/or refitted similar sand on other areas in CARNIVAL'S control to make them less dangerous.

g.  There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in **paragraph 16** of this Complaint, and CARNIVAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

h.  CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in ALLEN'S incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject area prior to ALLEN's incident.

i.  Previous passengers suffered incidents involving ship-sponsored games and/or intoxicated passengers/participants at Half Moon Cay, including, but not limited to *Simpson v. Carnival Corp.*, No. 20-25253-CIV, 2021 WL 6428172, at *1 (S.D. Fla. Dec. 30, 2021) (incident on Half Moon Cay), *Manukian v. Carnival Corp.*, No. 1:15-CV-21437-UU, 2015 WL 9660017, at *1 (S.D. Fla. June 19, 2015) (incident on Half Moon Cay), *Moseley v. Carnival Corp.*, No. 1:20-CV-20419-KMM, 2020 WL 9209743, at *1 (S.D. Fla. July 15, 2020) (incident on Half Moon Cay), *Cosmo v. Carnival Corp.*, 272 F. Supp. 3d 1336 (S.D. Fla. 2017) (incident involving a Carnival

sponsored game), *McDonald v. Carnival Cruise Lines, Inc.*, No. 97-2101-CIV-LENARD, 1999 WL 1338095, at *1 (S.D. Fla. Mar. 11, 1999) (incident involving a Carnival sponsored game), *Tesoriero v. Carnival Corp.*, No. 16-21769-CIV, 2017 WL 8895347, at *20 (S.D. Fla. Sept. 22, 2017), report and recommendation adopted, No. 16-CV-21769, 2018 WL 1894717 (S.D. Fla. Mar. 23, 2018), aff'd but criticized, 965 F.3d 1170 (11th Cir. 2020) (incident involving a Carnival sponsored game), *Gould v. Carnival Corp.*, No. 19-CV-20289, 2021 WL 4189588, at *11 (S.D. Fla. Sept. 15, 2021), aff'd, No. 21-13308, 2022 WL 5240409 (11th Cir. Oct. 6, 2022) (incident involving CARNIVAL's over-service of alcohol to intoxicated passenger who injured another plaintiff), *DW by & through CW v. Carnival Corp.*, No. 17-20115-CIV, 2018 WL 7822329, at *1 (S.D. Fla. June 19, 2018) (incident involving CARNIVAL's over-service of alcohol to intoxicated passenger who injured another plaintiff), *Bounds v. Carnival Corp.*, No. 14-22197-CIV, 2015 WL 12712057, at *1 (S.D. Fla. Mar. 3, 2015) (incident involving CARNIVAL's over-service of alcohol to intoxicated passenger who injured another plaintiff).

j.   Moreover, CARNIVAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

19.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

20.   The subject area and the vicinity lacked adequate safety features to prevent or minimize ALLEN'S incident and/or injuries.

21.   These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

22.   These hazardous conditions existed for a period of time before the incident.

23.   These conditions were neither open nor obvious to ALLEN.

24.   At all times relevant, CARNIVAL failed to adequately inspect the subject area and the vicinity for dangers, and CARNIVAL failed to adequately warn ALLEN of the dangers.

25.   At all times relevant, CARNIVAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

26.   At all times relevant, CARNIVAL failed to maintain the subject area and the vicinity in a reasonably safe condition. For example, CARNIVAL failed to perform regular upkeep on the subject sand, including, but not limited to, applying anti-rust materials/measures to it, such that it became unreasonably rusty, with jagged sharp edges, which caused ALLEN's incident for the reasons previously discussed. This failure to maintain is only an example, and CARNIVAL failed to maintain the subject area and the vicinity in other ways as well.

27.   At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in ALLEN'S incident.

28.   At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in ALLEN'S incident.

29.   The crewmembers of the *Sunshine* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

30.   CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

31.   CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

32.     The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

33.     The crewmembers were represented to ALLEN and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. ALLEN detrimentally relied on these representations as ALLEN would not have proceeded on the subject cruise had ALLEN believed the crewmembers were not employees of CARNIVAL.

**COUNT I**
**NEGLIGENT FAILURE TO INSPECT**

34.     ALLEN hereby adopts and re-alleges each and every allegation in paragraphs 1 to 33, as if set forth herein.

35.     CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

36.     This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

37.     At all times material, CARNIVAL, through its crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to ALLEN and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions

discussed **paragraph 16** of the instant Complaint were present at the time of ALLEN'S incident.

38.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

39.   These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

40.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

41.   CARNIVAL'S negligence proximately caused ALLEN great bodily harm in that, but for CARNIVAL'S negligence, ALLEN's injuries would not have occurred.

42.   As a result of CARNIVAL'S negligence, ALLEN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of ALLEN'S vacation, cruise, and transportation costs.

43.   The losses are permanent and/or continuing in nature.

44.   ALLEN suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TANYA ALLEN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for

damages and costs that ALLEN will suffer and incur in the future, as a result of ALLEN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of ALLEN'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT II
### <u>NEGLIGENT FAILURE TO MAINTAIN</u>

45.    ALLEN hereby adopts and re-alleges each and every allegation in paragraphs 1 to 33, as if set forth herein.

46.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

47.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

48.    At all times material, CARNIVAL, through its crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to ALLEN and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed **<u>paragraph 16</u>** of the instant Complaint were present at the time of ALLEN'S incident.

49.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant complaint.

50.    Moreover, these risk-creating and/or dangerous conditions were caused by

CARNIVAL'S failure to adequately maintain the subject area and the vicinity.

51.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

52.    CARNIVAL'S negligence proximately caused ALLEN great bodily harm in that, but for CARNIVAL'S negligence, ALLEN's injuries would not have occurred.

53.    As a result of CARNIVAL'S negligence, ALLEN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of ALLEN'S vacation, cruise, and transportation costs.

54.    The losses are permanent and/or continuing in nature.

55.    ALLEN has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, TANYA ALLEN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that ALLEN will suffer and incur in the future, as a result of ALLEN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of ALLEN'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT III
## <u>NEGLIGENT FAILURE TO REMEDY</u>

56.     ALLEN hereby adopts and re-alleges each and every allegation in paragraphs 1 to 33, as if set forth herein.

57.     CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

58.     This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

59.     At all times material, CARNIVAL, through its crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to ALLEN and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in **paragraph 16** of the instant Complaint were present at the time of ALLEN'S incident.

60.     CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 19 of the instant Complaint.

61.     Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the subject area.

62.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

63.     CARNIVAL'S negligence proximately caused ALLEN great bodily harm in that, but

for CARNIVAL'S negligence, ALLEN's injuries would not have occurred.

64.    As a result of CARNIVAL'S negligence, ALLEN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of ALLEN'S vacation, cruise, and transportation costs.

65.    The losses are permanent and/or continuing in nature.

66.    ALLEN has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, TANYA ALLEN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that ALLEN will suffer and incur in the future, as a result of ALLEN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of ALLEN'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

67.    ALLEN hereby adopts and re-alleges each and every allegation in paragraphs 1 to 33, as if set forth herein.

68.    At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including ALLEN.

69.    Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn

passengers of any dangers that it knew or should have known were not open and obvious to ALLEN.

70.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

71.    At all times material, CARNIVAL, through its crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to ALLEN and was negligent by failing to warn ALLEN of the dangerous conditions discussed in **paragraph 16(a-d and f)** of the instant Complaint.

72.    Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed above.

73.    These dangerous conditions were also created by CARNIVAL.

74.    CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn ALLEN despite knowing of the dangers.

75.    These dangerous conditions existed for a period of time before the incident.

76.    These conditions were neither open nor obvious to ALLEN.

77.    CARNIVAL'S breach was the cause in-fact of ALLEN'S great bodily harm in that, but for CARNIVAL'S breach ALLEN's injuries would not have occurred.

78.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

79.   CARNIVAL'S breach proximately caused ALLEN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

80.   As a result of CARNIVAL'S negligence, ALLEN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of ALLEN'S vacation, cruise, and transportation costs.

81.   The losses are permanent and/or continuing in nature.

82.   ALLEN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TANYA ALLEN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that ALLEN will suffer and incur in the future, as a result of ALLEN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of ALLEN'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT V
### NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY

83.   ALLEN hereby adopts and re-alleges each and every allegation in paragraphs 1 to 33, as if set forth herein.

84.   At all times material hereto, CARNIVAL owed a duty to its passengers, and in

particular a duty to ALLEN, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in **paragraph 16** in the instant Complaint, as well as to design and install reasonable safeguards.

85.   At all times material hereto, CARNIVAL participated in the design process of the subject area by generating design specifications for the builder to follow, and to put the area in which ALLEN was injured into the channels of trade, and/or CARNIVAL approved of the subject area's design, including the design of the subject sand and the vicinity.

86.   At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Sunshine*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to ALLEN, to design, install and/or approve of the subject area and the vicinity without any defects.

87.   At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject area and the vicinity involved in ALLEN'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

88.   CARNIVAL provides design elements for locations on its islands to the builders and/or approves of design elements which include the subject area and the vicinity.

89.   CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the subject area, including the subject sand, during the new build process.

90.   CARNIVAL has the right to enter the ship and inspect it during construction to ensure

that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

91.     CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

92.     However, CARNIVAL permitted the dangerous conditions discussed in **paragraph 16** of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

93.     Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed above.

94.     The design flaws that made the subject area and the vicinity involved in ALLEN'S incident unreasonably dangerous were the direct and proximate cause of ALLEN'S injuries.

95.     CARNIVAL is liable for the design flaws of the subject area, including of the subject sand and the vicinity involved in ALLEN'S incident, which it knew or should have known of.

96.     CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

97.     CARNIVAL'S breach was the cause in-fact of ALLEN'S great bodily harm in that, but for CARNIVAL'S breach ALLEN's injuries would not have occurred.

98.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

99.     CARNIVAL'S breach proximately caused ALLEN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

100.  As a result of CARNIVAL'S negligence, ALLEN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of ALLEN'S vacation, cruise, and transportation costs.

101.  The losses are permanent and/or continuing in nature.

102.  ALLEN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TANYA ALLEN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that ALLEN will suffer and incur in the future, as a result of ALLEN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of ALLEN'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE AGAINST CARNIVAL FOR THE ACTS OF ITS CREWMEMBERS**
**BASED ON VICARIOUS LIABILITY**
**(OVER-SERVICE OF ALCOHOL)**

103.  ALLEN hereby adopts and re-alleges each and every allegation in paragraphs 1-18, as if set forth herein.

104.  CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

105. This duty includes, but is not limited to, the responsibility of a marine carrier of

passengers under applicable U.S. maritime common law to supervise and/or assist passengers on its vessels and its islands who CARNIVAL knew, or should have known, are engaging, or are likely to engage, in behavior potentially dangerous to themselves or others on its vessels and its islands.

106.  A primary reason why U.S. maritime common law places these duties upon marine carriers of passengers, rather than leaving it up to the passengers to supervise themselves in what (at least to the passengers) are the unfamiliar surroundings of a cruise ship and private islands, is to prevent marine accidents and causalities from occurring on vessels and private islands. Such incidents, unlike shoreside accidents, have the potential and likelihood to disrupt international commerce by diverting vessels from their itineraries for the purpose of obtaining advanced medical treatment and/or to conduct rescue operations and/or to call other vessels and/or shoreside agencies like the U.S. Coast Guard to come to render assistance.

107. CARNIVAL deliberately makes alcohol available to passengers and crew on its vessels and its islands, despite knowing that alcohol is banned for safety reasons on vessels operated by the U.S. Government and military and aboard U.S. flagged merchant ships.

108.  The sale of alcohol, in fact, represents one of the top sources of on-board revenue to CARNIVAL, grossing over millions per year, upon information and belief.

109.  To maximize this revenue, CARNIVAL deliberately designs its vessels and its islands such as the subject area to ensure that there are alcohol serving stations in every nook and cranny of them.

110.  Neither CARNIVAL nor the law of the relevant flag nation(s) impose a "legal limit" or any other legal consequences for alcohol consumption or intoxication on CARNIVAL'S ships and private islands. Neither does CARNIVAL employ any systematic method to keep track of how

much alcohol a particular passenger has consumed over time, other than perhaps looking for visual signs of intoxication, which of course means that the individual is already drunk.

111. CARNIVAL, quite to the contrary, deliberately does as much as possible to encourage and facilitate alcohol consumption on its vessels and its islands.

112. CARNIVAL fully understands and expects that alcohol consumption by passengers will result in the diminution of their inhibitions and good judgment, which CARNIVAL, upon information and belief, expects will foster the general party atmosphere that CARNIVAL desires, and promotes on its vessels and its islands, so as to enhance some of its other revenue producing activities such as gambling and the purchase of more alcohol.

113. CARNIVAL thus knew that the presence of intoxicated passengers on its vessels and its islands, including in the subject area and the vicinity, was common.

114. As a result of CARNIVAL'S scienter as described above, and as described in paragraph 16 of this complaint, CARNIVAL had notice of the risk of the subject incident, which was foreseeable.

115. CARNIVAL'S above-described knowledge and information was not possessed by ALLEN, at all relevant times.

116. The male passenger who collided with ALLEN drank numerous alcoholic beverages in the hours leading up to her incident.

117. It is foreseeable to CARNIVAL that allowing drunk passengers to roam about the ship increases the probability of the dangers and risks associated with drunken behavior including uninvited physical contact perpetrated by intoxicated passengers on other unsuspecting passengers.

118. As a result of consuming an unreasonable amount of alcoholic beverages, the male

passenger who collided with ALLEN became intoxicated within hours prior to her incident, and the male passenger who collided with ALLEN's state of intoxication was and/or should have been readily observable to any reasonable person, including CARNIVAL's crewmembers.

119. Alternatively, if the male passenger who collided with ALLEN did not become intoxicated, the male passenger who collided with ALLEN became impaired and/or his ability to perceive his surroundings were otherwise adversely affected, and this impaired/diminished condition was and/or should have been readily observable to any reasonable person, including CARNIVAL's crewmembers.

120. The male passenger who collided with ALLEN was continuously served alcohol by CARNIVAL's crewmembers numerous times, well past the point where a person would become visually intoxicated.

121. CARNIVAL is vicariously liable for the acts of its crewmembers who continued to serve the male passenger who collided with ALLEN alcoholic beverages past the point where he became visually intoxicated.

122. CARNIVAL knew, or should have known, that the risk and actual occurrences of violent incidents were magnified and/or influenced by factors such as the design and installation of the subject area and the vicinity, the unfamiliarity of passengers with its cruise ships, the passenger's lack of knowledge of the prior, severe incidents and/or injuries which CARNIVAL knew to be associated with the consumption of alcoholic beverages, the presence and consumption of alcohol on vessels and private islands which reduced passengers' judgment, and the general party atmosphere fostered on the vessel and islands owned by CARNIVAL, which deliberately markets all you can drink beverage packages.

123. The crewmembers who breached their duty of reasonable care by over-serving

alcohol to the male passenger who collided with ALLEN were agents of CARNIVAL for the following reasons:

    a.    They were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

    b.    These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

    c.    These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

    d.    CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

124.  The crewmembers' breach was the cause in-fact of ALLEN'S great bodily harm in that, but for CARNIVAL'S breach, ALLEN'S injuries would not have occurred.

125.  The crewmembers' breach proximately caused ALLEN great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

126.  As a result of the crewmembers' negligence, ALLEN has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of ALLEN'S vacation, cruise, and transportation costs.

127.  The losses are permanent and/or continuing in nature.

128.  ALLEN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TANYA ALLEN, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that ALLEN will suffer and incur in the future, as a result of ALLEN's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of the value of ALLEN'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, lost wages, lost earning capacity, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, TANYA ALLEN, demands trial by jury on all issues so triable.

**Dated:** December 14, 2022.

Respectfully submitted,

*/s/ Spencer Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
*Attorneys for ALLEN*